**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

JEFF MOORE,

        Plaintiff,

vs.

LEHIGH CEMENT COMPANY,

        Defendant.

No. C 09-3066-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   A. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . 10
   B. ADA Or ADAAA Standards? . . . . . . . . . . . . . . . . . . . . . . . . . 13
   C. Disability Discrimination And Accommodation Claims . . . . . . . . . . 13
       1. Types of "disability" at issue . . . . . . . . . . . . . . . . . . . . . 14
       2. Moore's "impairment" . . . . . . . . . . . . . . . . . . . . . . . . . 15
       3. Whether the "impairment" was "substantially limiting" . . . . 16
          a. Arguments of the parties . . . . . . . . . . . . . . . . . . 16
          b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
             i. Actual disability . . . . . . . . . . . . . . . . . . . 18
             ii. Perceived disability . . . . . . . . . . . . . . . . . 20
       4. Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
   D. Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
       1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . 24
       2. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

This lawsuit, involving an employee's claims against his employer for disability discrimination, perceived disability discrimination, failure to accommodate, and retaliation, pursuant to the Americans With Disabilities Act (ADA) and the Iowa Civil Rights Act (ICRA), is before the court on the defendant employer's motion for summary judgment. In essence, the employer contends that the employee does not qualify for protection under the disability discrimination laws, can show no causal connection between his complaints of discrimination and allegedly retaliatory action, and voluntarily quit his job rather than accept appropriate disciplinary action for a work rules violation. The employee contends that he has generated genuine issues of material fact on each of his claims, clearing the way for a jury trial.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, the court will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning the defendant's motion for summary judgment.

Plaintiff Jeff Moore was a long-time employee of defendant Lehigh Cement Company. He had been employed, except for periods when he was laid off, since 1977, and had been a full-time, regular employee from June 13, 1988, until August 22, 2008. During the times relevant to the present lawsuit, Moore was apparently doing maintenance work. Like other employees of Lehigh, Moore was a union member, so that he was subject to a collective bargaining agreement between Lehigh and the union. Among other

things, the collective bargaining agreement provided that Lehigh could require a complete medical examination of any employee, at any time, at its discretion; that Lehigh could make and enforce rules for the maintenance of discipline and safety; that Lehigh could suspend, discharge, or otherwise discipline employees for just cause; and that discrimination was prohibited. The parties agree that Lehigh also published plant rules and notice that violation of such rules was cause for disciplinary action, which could include suspension or discharge.

Moore had suffered from epilepsy since childhood, but Lehigh originally hired and later re-hired Moore knowing that he had this condition. In 1981, Moore's doctor wrote a letter to Lehigh stating that, if Moore had seizures at work, it "could be dangerous to him as a seizure around heavy machinery could be catastrophic," but that he also believed that Moore was employable as long as his medication levels remained at a stable level in his system. It appears that Moore's seizures could be triggered by overwork, lack of sleep, or use of alcohol or caffeine. Moore had seizures while working at Lehigh twice in January 1991, once in October 1991, and once in April 1996, but each time, Lehigh worked with Moore to accommodate him and to return him to work. Moore had another seizure while at work on or about February 14, 2003, but was released to return to work, on or about June 25, 2003, without restrictions, by his neurologist, Dr. Hayreh. Because Moore had been off work for a medical reason, Lehigh exercised its right under the collective bargaining agreement to require Moore to undergo a return-to-work physical. On June 27, 2003, Moore was seen by Health Works Occupational Health and was also released to return to work without restrictions.

Moore had another seizure while at work on February 20, 2004. On March 16, 2004, Moore's physician, Dr. Coddington, again released him to return to work, but with the restrictions that he could not drive and could not work more than forty-five hours per

week.  According to Moore, the seizures in 2003 and 2004 occurred when he was working about 60 hours per week and, at the time of the 2004 seizure, he had also been assisting a neighbor with snow removal.  The parties dispute whether the restrictions placed on Moore in March 2004 meant that Moore was disqualified from work at Lehigh, or whether Lehigh decided, based upon a review of the restrictions and on advice of a consultant, to disqualify Moore from working at Lehigh.  They agree, however, that Moore was paid sickness and accident benefits for the periods he was unable to work.

On or about August 25, 2004, Moore obtained a new note from Dr. Coddington releasing him to return to work without any restrictions, but Lehigh again exercised its right to require Moore to undergo a return-to-work physical.  On or about September 20, 2004, Moore saw Dr. Mixdorf, Lehigh's chosen physician.  Dr. Mixdorf reviewed records from Dr. Coddington, but unlike Dr. Coddington, restricted Moore to working no more than 50 hours per week.[1]  The parties dispute whether Lehigh thereafter attempted to accommodate Moore by scheduling him for less than 50 hours per week, as Lehigh contends, or sought to impose harsher work restrictions on him than had been placed on him by his personal physician, as Moore contends.

The parties agree that, in January 2005, Moore met with Ron Guthrie, Lehigh's human resources director, and Dennis Fuller, the union president at the time, to discuss options to relieve Moore from the stress of his job and to better maintain his overtime assignments.  The parties also agree that, beginning in approximately early 2007, Moore began complaining that the restriction on the number of hours that he could work caused him to work less hours than co-workers and prevented him from getting his preferred

---

[1]Dr. Mixdorf also required that Moore use a safety harness when working more than five feet off the ground, but this requirement was a universal safety precaution for all employees.

assignments. Lehigh told Moore that it must comply with the restrictions imposed by Dr. Mixdorf until Dr. Mixdorf changed those restrictions. By verbal requests and a letter, Lehigh asked Moore to provide Dr. Mixdorf with a release so that Dr. Mixdorf could review his file and possibly release Moore to return to work without restrictions. Moore refused to provide Dr. Mixdorf with a release, however, because he thought that the information sought was "confidential" and because he could "see no reason why they were asking for my doctor's releases when their doctor had the restriction set." Moore points out that Lehigh did not exercise its right to have him examined again by Dr. Mixdorf and that the collective bargaining agreement did not require him to provide the requested medical records.

On April 17, 2007, Moore filed a Charge of Discrimination against Lehigh with the Mason City Human Rights Commission, indicating that he wished the charge to be filed with the EEOC, as well. Moore alleged the following as the basis for his Charge:

> [Lehigh] is aware of the history of my disability which in the past caused me to have work restrictions. I currently work for [Lehigh] as a millwright. Even though I no longer have work restrictions and I have applied for several bid jobs, [Lehigh] has restricted my job opportunities. [Lehigh] refuses to allow me to bid jobs unless I have my doctor provide [Lehigh's] doctor with my medical records. [Lehigh] has singled me out by not allowing me to work the same hours as my coworkers. I believe I have been denied equal terms and conditions of employment due to my disability.

Defendant's Appendix at 40.

Although Moore premised his discrimination charge, in part, on a contention that he was not being allowed to bid on jobs, he admitted at the agency's factfinding hearing that he was never denied the opportunity to bid on a job nor did he file a grievance alleging that he had been. Moore contends, however, that he had asked to be placed in easier jobs,

which are non-bid jobs under the collective bargaining agreement, but had not been placed in any of those jobs. He also contends that he requested to be placed in a vacation relief position in the machine shop, but he was denied that opportunity, because it was not a bid job. Moore also contends that he overheard the machine shop supervisor say that she did not want Moore in that job because of his epilepsy. The parties agree that, during his employment, Moore bid on five jobs, but he withdrew his bid on three of those jobs, and he was not the most senior bidder on the other two. Moore explains, however, that he was talked out of bidding on at least one of the jobs by Guthrie, who convinced him that the job or jobs in question involved too much overtime. The parties agree that Moore withdrew his bid for a front end loader job, because it involved split days off and weekend work, and Lehigh points out that Moore also said that he did not want the job because he would have been too "cooped up." The parties agree that Moore's work assignments and schedule were impacted by his restriction to no more than 50 hours a week, although Lehigh contends that this happened occasionally, while Moore contends that this happened routinely.

The events leading to Moore's early retirement (according to Lehigh) or constructive discharge (according to Moore) occurred in August of 2008. On August 12, 2008, Randall Lindquist, Moore's supervisor, issued him a verbal warning, because when he checked on Moore and a co-worker, Darren Dunbar, Lindquist believed that Dunbar had done all the "gutting and rebagging" on the job that the two had been assigned without Moore's assistance. Moore contends that he was assisting Dunbar in an appropriate manner, but does not deny the verbal warning. The next day, August 13, 2008, Lindquist assigned Moore to perform a repair at the Williams Mill Dust Arrestor Hopper and asked Moore to meet him at that job site. However, when Moore got to the job site, it did not appear to him that any repair was required, so he contends that he went in search of a

6

supervisor for clarification of his job assignment. When Lindquist arrived at the job site shortly after sending Moore there, Moore was not there. After searching for Moore, Lindquist found him in his cart, well off the road. Lehigh contends that Lindquist found Moore with his head resting on the steering wheel of his cart, but Moore denies this. Moore admits, however, that he had stopped to watch a front end loader, which he thought was doing something unusual, "out of . . . stupid curiosity." After returning to the shop, Lindquist informed Moore, in the presence of his union representative, that Moore was suspended pending discharge for violation of Plant Conduct Rule No. 12. That rule prohibits "[l]eaving Employee's working place or visiting around the plant away from his/her usual or assigned place of duty at any time, either during or outside of his/her regular working hours, without permission of his/her supervisor."

During a subsequent meeting with union representatives concerning Moore's work suspension, Lehigh offered Moore the opportunity to return to work under a "last chance" agreement. Lehigh contends that the "last chance" agreement was offered at the union's request, but Moore contends that the union was only allowed "input" into the "last chance" agreement. Although the parties agree that other employees were offered "last chance" agreements after rules violations, they dispute whether those other employees were similarly situated to Moore. The "last chance" agreement provided that Moore would not be reinstated until after he completed a fitness-for-duty examination and that such examination would not be scheduled until Moore authorized his personal physician to release his records regarding Moore's seizure disorder from September 20, 2004, through the date of the agreement to Lehigh's consulting physicians to determine if Moore's current work restrictions should continue. Moore contends, and Lehigh does not dispute, that the incidents giving rise to disciplinary action in August 2008 did not have anything to do with Moore's medical condition. Nevertheless, Lehigh contends that the provision requiring

release of Moore's medical records was negotiated, because Moore insisted that he should no longer be limited to 50 hours or less per week, yet had refused to provide updated medical records for Dr. Mixdorf to review.

Moore did not sign the "last chance" agreement and, instead, resigned. His last day of work was August 22, 2008. Moore explains that he decided that he could not risk being terminated on any grounds, pursuant to the "last chance" agreement, because if he had been terminated from employment, he would not have been eligible to receive retirement medical and pension benefits on October 1, 2008, but only much later. Moore's retirement became effective October 1, 2008, and he did receive retirement medical and pension benefits from Lehigh from that date.

On August 29, 2008, Moore filed a second charge of discrimination with the Mason City Human Rights Commission, based on disability discrimination and retaliation. Lehigh contends, and Moore admits, that Lindquist was not informed that Moore had filed any charges of discrimination until on or about September 25, 2008, well after he had taken disciplinary action against Moore in August 2008 and after Moore had resigned. Moore contends, however, that Guthrie knew of Moore's earlier charge of discrimination, supported the decision to suspend Moore pending discharge, and authored Moore's "last chance" agreement. Thus, Moore contends that an actor capable of retaliatory action did know of his earlier complaints of discrimination at the time that Lehigh took adverse action against him.

## B. Procedural Background

Moore filed his Complaint (docket no. 2) in this action on October 15, 2009. In it, he asserts the following claims: in **Count I**, a claim under the Americans with Disability Act (ADA), 42 U.S.C. §12112 and Iowa Code Chapter 216 (the Iowa Civil Rights Act

(ICRA)), Moore alleges that Lehigh constructively discharged him and took other adverse employment action against him in retaliation for his filing and participation in his first administrative complaint regarding discrimination; in **Count II**, also a claim under the ADA and the ICRA, Moore alleges that he was constructively discharged because of his physical disability; in **Count III**, another ADA claim, Moore alleges that Lehigh constructively discharged him and took adverse employment action against him because Lehigh regarded him as having a physical impairment; in **Count IV**, a claim under the ADA and the ICRA, Moore alleges that Lehigh failed to accommodate his disability; and in **Count V**, a claim under the ADA and the ICRA, Moore alleges that Lehigh denied him employment opportunities when he was an otherwise qualified individual with a disability. Moore prays for compensatory damages for lost or unpaid wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; reinstatement with retroactive seniority; punitive damages; attorneys' fees and costs; and such other relief as the court deems necessary. Lehigh filed an Answer (docket no. 5) on November 18, 2009, denying Moore's claims, and asserting various affirmative defenses. This matter has been scheduled for a jury trial to begin on April 11, 2011.

On October 8, 2010, Lehigh filed its Motion For Summary Judgment (docket no. 10), which is now before the court, seeking judgment as a matter of law on all of Moore's claims. After an extension of time to do so, Moore filed his Resistance To Defendant's Motion For Summary Judgment (docket no. 13) on November 12, 2010. Lehigh filed a Reply (docket no. 14) in further support of its motion on November 18, 2010.

By Order (docket no. 15), filed January 19, 2011, the court set telephonic oral arguments on Lehigh's Motion For Summary Judgment for January 28, 2011. At the oral

arguments, plaintiff Jeff Moore was represented by Jay Madison Smith of the Smith & McElwain Law Office in Sioux City, Iowa. Defendant Lehigh Cement Company was represented by Sarah Reindl, who argued the motion, and Jay M. Shriver of Pappajohn, Shriver, Eide & Nielsen, P.C., in Mason City, Iowa. The oral arguments were spirited and informative.

Lehigh's Motion For Summary Judgment is now fully submitted.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it

has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth

of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

The court recognizes "that summary judgment is disfavored in employment discrimination cases." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004) ("[S]ummary judgment should be used sparingly in employment discrimination cases . . . ."); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("[S]ummary judgment should seldom be used in employment discrimination cases."). This is so, "[b]ecause discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson*, 425 F.3d at 542 (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). Nevertheless, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The court will apply these standards to Lehigh's Motion for Summary Judgment.

## B.  ADA Or ADAAA Standards?

Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009.  *See* ADA Amendments Act (ADAAA) of 2008, Pub.L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008).  "The amendments broadened the definition of what constitutes a disability and rejected the strict standards the Supreme Court set forth in *Toyota [Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)]."  *Nyrop v. Independent Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010) (citing 122 Stat. at 3554).  Lehigh posits, and Moore does not dispute, that pre-ADAAA standards apply in this case, because all employment actions and employer activities related to this matter allegedly occurred prior to January 1, 2009.  As the parties recognize, in *Nyrop*, the Eighth Circuit Court of Appeals joined several other Circuit Courts of Appeals in holding that the ADAAA "is not retroactive" and, thus is "inapplicable" to claims of alleged disability discrimination before the effective date of the amendments.  *Id*.  The court agrees that pre-ADAAA standards are applicable here, because the claims involve conduct before the ADAAA became effective.

## C.  Disability Discrimination And Accommodation Claims

As the Eighth Circuit Court of Appeals and the Iowa Supreme Court had both recognized, at least before the ADAAA became effective, "ADA and ICRA disability claims are analyzed under the same standards."  *Tjernagel v. Gates Corp.*, 533 F.3d 666, 671 (8th Cir. 2008); *Nuzum v. Ozark Automotive Distribs., Inc.*, 432 F.3d 839, 842 n.2 (8th Cir. 2005); *Schlitzer v. University of Iowa Hospitals & Clinics*, 641 N.W.2d 525, 529 (Iowa 2002) ("The common goals of the Federal ADA and our civil rights act have encouraged us to look to the federal statutory and regulatory standards in applying our statute").  Consequently, because the ADAAA is inapplicable here, the court's discussion

of "disability" in this case applies equally to Moore's claims under the ADA and the ICRA.

As the Eighth Circuit Court of Appeals has explained,

> The ADA and ICRA prohibit "discrimination by a covered employer against a qualified individual with a disability because of the disability. An employer can discriminate by failing to make reasonable accommodation to the known limitations of an employee." [*Nuzum*, 432 F.3d] at 842 (citations and internal quotation marks omitted).

*Tiernagel*, 533 F.3d at 671.

### 1.    *Types of "disability" at issue*

As the Eighth Circuit Court of Appeals has also explained,

> An individual does not prove that he or she has a disability simply by showing an impairment that makes it impossible to do his or her particular job without accommodation. Rather, establishing "disability" is a significant hurdle that can prevent a person who was denied a job because of an impairment from being covered by the ADA.

*Tiernagel*, 533 F.3d at 671 (quoting *Nuzum*, 432 F.3d at 842-43, with citations omitted). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Moore contends that he is either actually disabled or was regarded as disabled.

The Eighth Circuit Court of Appeals has explained the requirements to prove "actual" disability and "regarded as" disability, as follows:

> Under the ADA and ICRA, a disability means an "individual must have (1) 'a physical or mental impairment' that (2) 'substantially limits one or more major life activities'

of the individual." *Id.* at 843 (citing 42 U.S.C. § 12102(2)). Having a physical or mental impairment is not enough because the impairment must also comprise a substantial limitation of a major life activity. *See id.*

\* \* \*

"In order to be regarded as disabled . . . the employer must mistakenly believe that the actual impairment substantially limits the employee's ability to work." *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 989 (8th Cir. 2007) (internal citations omitted). "A substantial limitation is present only when the employee is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.'" *Id.* (quoting *Conant v. City of Hibbing*, 271 F.3d 782, 784-85 (8th Cir. 2001) (per curiam)). "If an employer believes that an employee is unable to perform 'one specific job,' then the employee is not regarded as disabled." *Id.* (citation omitted).

*Tjernagel*, 533 F.3d at 671-72.

### 2. Moore's "impairment"

There does not appear to be any dispute that Moore has a physical or mental impairment, the first requirement for either "actual" or "regarded as" disability, in the form of epilepsy. *See Brunke v. Goodyear Tire and Rubber Co.*, 344 F.3d 819, 822 (8th Cir. 2003); 29 C.F.R. § 1615.103(1)(ii). The next, and more significant question here, is whether that impairment either substantially limits one or more major life activities or was mistakenly believed by Lehigh to substantially limit a major life activity. *See Tjernagel*, 533 F.3d at 671-72 (having a physical or mental impairment is required, but is not enough to prove disability).

### 3.    Whether the "impairment" was "substantially limiting"

#### a.    Arguments of the parties

Lehigh argues that Moore was not substantially limited in the major life activity of working, because the Eighth Circuit Court of Appeals has recognized that being limited to 40 to 50 hours per week is not substantially limiting. Lehigh points out that Moore's limitation on hours did not disqualify him from a whole class of jobs and contends that Lehigh accommodated Moore by limiting his hours to 50 per week. Lehigh also argues that it did not regard Moore as substantially limited in his ability to work, either, because the restrictions it imposed were based on its doctor's written opinion. Lehigh contends that Moore cannot complain that Dr. Mixdorf imposed greater restrictions than his own doctor, because Moore refused to participate in the interactive process to determine what, if any, restrictions were required by refusing to provide medical records from his own doctor to Dr. Mixdorf. Lehigh argues that, as a matter of law, Moore's complaints that he did not get his preferred assignments, because of his restriction on hours, is not enough to demonstrate that Lehigh regarded him as substantially limited in the major life activity of working.

Moore argues that a reasonable jury could find that he is disabled under the ADA because he is substantially limited in major life activities when compared to the average person in the general population, apparently asserting that he is substantially limited in various daily life activities, as a whole. Somewhat more specifically, he acknowledges case law holding that individuals are not disabled under the ADA if the only manner in which they are limited is in the number of hours that they may work, but he contends that he is not simply alleging substantial limitations in the major life activity of working. He points to an interrogatory answer in which he asserted that his seizures and the need to control them require him to work a reduced schedule; require him to rest, which limits his

ability to enjoy life and to provide fully for himself; require him to reduce his stress levels, which limits his ability to work in some occupations; require him to have assistance to care for himself after a seizure; and substantially limit major bodily functions, including his brain and neurological functioning. He contends that this interrogatory response was based, in part, on his medical records.

Moore also argues that he has generated genuine issues of material fact that Lehigh regarded him as disabled. He contends that Lehigh's reliance on Dr. Mixdorf's restrictions was not reasonable, because Dr. Mixdorf's restrictions were contrary to his own doctor's restrictions, even though Dr. Mixdorf asserted that he had relied on Moore's doctor's records. He also points out that, after a visit to Dr. Mixdorf on June 27, 2005, Dr. Mixdorf indicated that Moore could return to work without restrictions, but Lehigh continued to restrict his hours. He also contends that he reasonably refused to provide additional medical records, because the collective bargaining agreement did not require him to provide such records, Dr. Mixdorf had already imposed restrictions greater than the records he already had would have warranted, and there is no indication that he refused to respond to any request for an additional medical examination. He also contends that Lehigh regarded him as substantially limited, because it refused to assign him to the broad class of jobs requiring more than 50 hours per week, flexibility in scheduling, or operation of large equipment. Finally, he contends that he was dissuaded from pursuing or was rejected for jobs within his restrictions. At oral arguments, he asserted that Lehigh wants it both ways, arguing that he is not disabled, but that Lehigh accommodated him anyway, and that Lehigh accommodated him, but did not perceive him to be disabled.

In reply, Lehigh asserts that Moore has not pointed to any part of the record generating a genuine issue of material fact that he is substantially limited in the major life activity of working or in any other major life activity. Lehigh also points out, in its

response to Moore's statement of additional facts, that the June 27, 2005, release for return to work from Dr. Mixdorf related to a corneal abrasion of Moore's left eye, which was resolved, not to his epilepsy. At oral arguments, Lehigh asserted that Moore's claim appears to be based on the contention that he was given accommodations that he really did not need, a discrimination theory for which he has cited no legal support.

### b. Analysis

**i. Actual disability**. The parties agree, and the court concludes, that Moore's limitation to 50 hours of work a week does not substantially limit him in the major life activity of working. *See Heisler v. Metropolitan Council*, 339 F.3d 622, 628 n.4 (8th Cir. 2003) ("[W]e have repeatedly held that '[a]n employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week.'" (quoting *Kellog v. Union Pacific R.R. Co.*, 233 F.3d 1083, 1087 (8th Cir. 2000)); *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999) ("We find it hard to say that being limited to a 40- to 50-hour work week substantially limits one's ability to work."). Indeed, it appears that Moore does not rely on a substantial limitation in the major life activity of working, but on some limitations to various "major life activities," in combination or as a whole, as establishing the necessary "substantial limitation." The court also rejects this contention, as a matter of law.

It is true, as Moore contends, that, in *Rowles v. Automated Production Systems, Inc.*, 92 F. Supp. 2d 424 (M.D. Pa. 2000), the district court found sufficient evidence in the record to withstand a motion for summary judgment on the issue of actual disability, based on epilepsy, notwithstanding that, taken individually, the plaintiff's limitations on daily activities were not particularly significant, but "viewed in their entirety, one could reasonably conclude that such limitations are substantial." *Rowles*, 92 F. Supp. 2d at 429. Eighth Circuit law, however, requires substantial limitation *in a specified major life*

*activity*, not just some limitations to several major life activities that, in combination or as a whole, amount to a "substantial limitation" on daily life.

For example, in *Gretillat v. Care Initiatives*, 481 F.3d 649 (8th Cir. 2007), the Eighth Circuit Court of Appeals explained the "substantial limitation" and "major life activities" requirements, as follows:

> The terms "major life activities" and "substantial limitation" must be "interpreted strictly to create a demanding standard for qualifying as disabled. . . ." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); *accord Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.,* 370 F.3d 763, 768 (8th Cir. 2004). Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2006). More generally, they include "activities that are of central importance to daily life." *Williams,* 534 U.S. at 197, 122 S. Ct. 681. A court should consider the nature, severity, duration, and long-term impact of the impairment when deciding whether that impairment *substantially limits a major life activity. Wood,* 339 F.3d at 685 (citing 29 C.F.R. § 1630.2(j)(2) (2002) and *Cooper v. Olin Corp., Winchester Div.,* 246 F.3d 1083, 1088 (8th Cir. 2001)). The impairment must be of an extended or permanent duration, *Williams,* 534 U.S. at 198, 122 S. Ct. 681, and should be considered substantially limiting only if "an individual is '[s]ignificantly restricted as to the condition, manner or duration under which . . . the average person in the general population can perform *that same major life activity.*'" *Moysis v. DTG Datanet,* 278 F.3d 819, 825 (8th Cir. 2002) (alteration in original) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Furthermore, merely demonstrating that an impairment prevents one from performing job functions in the absence of accommodations does not suffice to demonstrate a disability. *Nuzum,* 432 F.3d at 842.

*Gretillat*, 481 F.3d at 652-53 (emphasis added). Although the Eighth Circuit Court of Appeals recognized that various limitations, taken together, might severely limit *a* major life activity, *see id.* at 654 (citing *Nuzum*, 432 F.3d at 846), it did not suggest that some limitations to several major life activities, taken together, could meet the necessary "substantial limitation" requirement. This reading is consistent with the plain language of the statute, which requires "a physical or mental impairment *that substantially limits one or more of the major life activities* of such individual." 42 U.S.C. § 12102(2)(A) (emphasis added). Moore improperly tries to separate the "substantially limits" requirement from the "one or more major life activities" requirement, but *at least one* major life activity must be substantially limited.[2]

Thus, Moore has failed to generate any genuine issues of material fact that he is "substantially limited in one or more major life activities," so that Lehigh is entitled to summary judgment on Moore's claims premised on "actual disability."

*ii.* ***Perceived disability***. Nor has Moore generated genuine issues of material fact on his claims based on the contention that Lehigh regarded him as disabled. The Eighth Circuit Court of Appeals has said, "If a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability." *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006). Lehigh relied on work restrictions imposed

---

[2]The statutory language defining disability in three ways was not changed in the ADAAA, but the definition of "major life activities" was expanded to include a new, non-exclusive list of "bodily functions." *See* 42 U.S.C. § 12102(2) (as amended). Thus, the court takes no position on whether any of the limitations on bodily functions that Moore identifies would have been "substantial limitations on one or more major life activities" under the ADAAA, if the ADAAA applied.

by Dr. Mixdorf, not on "myths or stereotypes" in restricting Moore's work hours. Moreover, at most, the restrictions imposed by Dr. Mixdorf only prevented Moore, and were only perceived by Lehigh to prevent Moore, from working in a narrow range of jobs, which does not amount to a perception that Moore was disabled. *Ollie v. Titan Tire Corp.*, 336 F.3d 680, 685-86 (8th Cir. 2003). Also, an employer "is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490-91 (1999) (emphasis in the original). Thus, Moore cannot generate genuine issues of material fact that Lehigh regarded him as disabled on the basis that Lehigh dissuaded him from pursuing or did not select him for certain positions.

The fact that Lehigh's doctor, Dr. Mixdorf, opted for a restriction on Moore's hours that Moore's treating physician, Dr. Coddington, did not find necessary, based on review of the same records, is not enough, standing alone, to generate a genuine issue of material fact that Lehigh unreasonably relied on Dr. Mixdorf's restrictions. This is particularly true, where it is undisputed that Lehigh repeatedly attempted to obtain access to Moore's medical records after 2004 to see if Dr. Mixdorf should reevaluate his restrictions, but Moore refused to provide those records. "[E]mployers are permitted 'to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims.'" *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 673 (8th Cir. 2010) (quoting *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998)). A request for medical records is *not* unreasonable, as a matter of law, even if a collective bargaining agreement only expressly authorizes medical examinations in the employer's discretion. Moore's explanation for why he refused to provide those records was not sufficient, as a matter of law, to make Lehigh's continued reliance on Dr. Mixdorf's work restrictions unreasonable. The question of whether an employee

fulfilled his or her obligation to participate in an interactive process to determine the extent of the employee's limitations is relevant to an employer's liability for "regarded as" disability discrimination, just as it is relevant to an employer's liability for "failure to accommodate" a disability. *See Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 193 (3d Cir. 2009) (citing *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 192-94 (3d Cir. 1999)). Here, as a matter of law, Moore did not participate in that process, leaving Lehigh no choice but to continue to rely on the restrictions imposed by Dr. Mixdorf.

Nor did Lehigh unreasonably rely on Dr. Mixdorf's restrictions on Moore's hours, where Moore contends that Dr. Mixdorf released him to work without restrictions on June 27, 2005. Dr. Mixdorf's Medical Exam Status Report, dated June 27, 2005, reflects that he was reporting on a follow-up visit for a corneal abrasion, which Dr. Mixdorf found was fully healed, and, therefore, did not require any work restrictions. Plaintiff's Appendix at 71. Dr. Mixdorf was not reporting on a review of Moore's epilepsy. A release to work without restrictions as the result of a corneal abrasion, which nowhere indicates that Dr. Mixdorf also considered Moore's epilepsy or the appropriateness of any work restrictions based on his epilepsy, does not generate any genuine issues of material fact that Dr. Mixdorf gave inconsistent work restrictions because of Moore's epilepsy, so that it also does not generate genuine issues of material fact that Lehigh unreasonably relied on the hours restrictions specifically imposed after Moore's 2004 epileptic seizure.[3]

Lehigh did not, as a matter of law, regard Moore as disabled, so Lehigh is entitled to summary judgment on Moore's claims premised on "regarded as" disability.

---

[3]Indeed, the court finds that Moore's reliance on this Medical Exam Work Status Report as showing that Dr. Mixdorf imposed inconsistent restrictions for his epilepsy is a gross mischaracterization of the record.

### 4.    Summary

Lehigh is entitled to summary judgment on Moore's claims premised on "actual" or "regarded as" disability, because he does not meet the definition of either kind of "disability" under the ADA.    Although an employer's failure to make a reasonable accommodation is a separate form of prohibited discrimination under the ADA, *see Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008), a failure-to-accommodate claim requires proof, *inter alia*, that the plaintiff has a disability within the meaning of the ADA.  *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007). Thus, the lack of a qualifying disability also means that Moore's failure-to-accommodate claims fail as a matter of law.  Lehigh is entitled to summary judgment on Moore's failure-to-accommodate claims, as well as his disability discrimination claims.

### D.  Retaliation

Moore's lack of a qualifying disability as a matter of law does not preclude his retaliation claim.  *See Heisler*, 339 F.3d at 632 ("An individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA as long as [he] had a good faith belief that [a] requested accommodation was appropriate."); *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189, 1195 (8th Cir. 2001) ("Proof of a retaliation claim is not the same as a direct claim of disability discrimination.").    The trigger for a retaliation claim is, instead, the plaintiff's participation in statutorily protected activity.  42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."); *Stewart*, 481 F.3d at 1042-43; *Mershon v. St. Louis Univ.*, 442 F.3d 1069,

1074 (8th Cir. 2006). Moore's retaliation claim is that Lehigh constructively discharged him and took other adverse employment action against him in retaliation for his filing and participation in his first administrative complaint regarding discrimination. Thus, the court must undertake separate consideration of Lehigh's motion for summary judgment on Moore's retaliation claims.

### 1.    *Arguments of the parties*

Lehigh argues that the time gap between the filing of Moore's administrative charge of discrimination and the allegedly retaliatory action, more than a year from April 2007 to August 2008, weakens any inference of retaliation in this case. Lehigh also argues that Lindquist, the supervisor responsible for initiating the disciplinary action against Moore, did not know at the time of the disciplinary action that Moore had filed a charge of discrimination in April 2007. Rather, Lindquist did not learn that fact until September 25, 2009. Lehigh also argues that Moore cannot generate any genuine issues of material fact that its reason for suspending him was a pretext for illegal retaliation, where the evidence that Moore violated Plant Rule No. 12 is undisputed. Lehigh argues, further, that Moore was not constructively discharged, because he was offered the opportunity to continue his employment under the "last chance" agreement, but chose to quit instead. At oral arguments, Lehigh attacked the whole basis for this claim, asserting that, because Moore had admitted in the administrative agency's factfinding proceedings that his administrative charge falsely stated that he was not being allowed to bid on jobs, he never engaged in any protected activity on which a retaliation claim could be based.

Moore argues that the delay between his protected activity and the allegedly retaliatory conduct is not fatal, because he had worked for Lehigh for more than 25 years and had been a good employee until the time of the disciplinary action in August of 2008. He also contends that Guthrie, the human resources director for Lehigh, was aware of his

prior charge of discrimination, was annoyed that Moore would not provide his medical records, and was involved in the process of imposing retaliatory conditions of continued employment on him. Moore contends that it is troubling that the record reflects that other employees were not necessarily treated in the same manner as he was with respect to being presented with a "last chance" agreement. Moore also contends that there are inferences that the disciplinary action was a pretext for retaliation, because of his lengthy employment with a good work record. He also contends that it is significant that, on March 31, 2010, after the end of his employment, shift supervisors were sent a memorandum to the effect that, if an employee was seen outside of his or her work area, the employee was to then be given only a verbal warning on the first offense and sent home on the second offense, that is, far less severe consequences than he faced for a first offense. Contrary to Lehigh's contentions, Moore contends that he does dispute whether he violated Plant Rule No. 12, because he contends that he was in the process of trying to find a supervisor to clarify his job assignment when he was found outside of his assigned work area, and simply got distracted by what a front end loader was doing. Finally, Moore contends that there are genuine issues of material fact that he was constructively discharged, instead of voluntarily quitting.

### 2. *Analysis*

The anti-retaliation provision of the ADA provides protection for an individual who has opposed any action or practice made unlawful by the ADA or who has made a charge or participated in an investigation or proceeding under the ADA. *See* 42 U.S.C. § 12203(a). Where, as here, there is no direct evidence of a retaliatory motive, the court must analyze the ADA retaliation claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Stewart*, 481 F.3d at 1042-43.

The Eighth Circuit Court of Appeals has explained this burden-shifting framework,

as follows:

> Under this framework, the initial burden is on the plaintiff to
> establish a prima facie case, consisting of evidence: "(1) that
> he or she engaged in statutorily protected activity; (2) an
> adverse employment action was taken against him or her; and
> (3) a causal connection exists between the two events."
> *Green,* 459 F.3d at 914. If the plaintiff establishes a prima
> facie case, the burden then shifts to the defendant to show a
> "non retaliatory reason for the adverse employment action."
> *Id.* (quotation marks omitted). If the defendant can show a
> legitimate, non-retaliatory reason for its actions, the burden
> returns to the plaintiff who "is 'then obliged to present
> evidence that (1) creates a question of fact as to whether
> [defendant's] reason was pretextual and (2) creates a
> reasonable inference that [defendant] acted in retaliation.'"
> *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th
> Cir. 2005) (quoting *Smith v. Allen Health Sys., Inc.,* 302 F.3d
> 827, 833 (8th Cir. 2002)).
>
> We have described the actual evidentiary burden that a
> plaintiff must meet at the prima facie stage as "minimal."
> *Logan,* 416 F.3d at 881. Where the evidence used to establish
> a prima facie case meets this minimal burden but is not strong,
> that evidence, standing alone, may be insufficient to sustain the
> plaintiff's case at the final stage of the burden-shifting
> analysis. *See id.* at 881 ("[A]n employee's attempt to prove
> pretext requires more substantial evidence than it takes to make
> a prima facie case because unlike evidence establishing a prima
> facie case, evidence of pretext and retaliation is viewed in light
> of the employer's justification.") (quotation and internal marks
> omitted); *Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d
> 940, 944-45 (8th Cir. 1994) (stating that it was error to
> conflate the ultimate burden of proof with the "minimal"
> threshold of proof necessary to make a prima facie case, but
> nevertheless affirming a grant of summary judgment where a
> defendant had offered legitimate reasons for its actions and

there was "no genuine dispute on the issue of pretext and the ultimate issue of defendant's intentional discrimination"). Conversely, where the evidence of causation for purposes of establishing a prima facie case is quite strong, it may be sufficient, standing alone, to prove a defendant's liability without resort to further evidence. *See, e.g., Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 834 (8th Cir. 2002) ("It is possible for strong evidence of a prima facie case to establish pretext as well.").

Taken together, these cases demonstrate that the burden-shifting framework is merely an analytical construct; the ultimate burden of proving retaliation remains at all times with the plaintiff; and the level of proof required to show causation is less at the prima facie stage than at the final stage of the *McDonnell Douglas* analysis. As such, if an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext. . . .

*Stewart*, 481 F.3d at 1043.

Although Lehigh asserted at oral arguments that Moore had not engaged in any protected activity, because his administrative charge was based on a false claim that he was denied the opportunity to bid on jobs, the court will assume, without deciding, that Moore engaged in protected activity when he filed his administrative charge of disability discrimination in April 2007. *Id.* (first element of the prima facie case). There also can be no genuine dispute that Moore's suspension was an adverse employment action, even if there are genuine issues of material fact as to whether or not Moore was constructively discharged. *Id.* (second element). The dispositive question here is whether Moore has generated genuine issues of material fact that a causal connection exists between the two events. *Id.* (third element).

Lehigh is correct that any inference of causal connection is substantially weakened by the length of time, more than a year, between the allegedly protected activity and the supposedly retaliatory conduct. Indeed, in *Stewart*, the Eighth Circuit Court of Appeals recognized that, "given a delay of sufficient length, the 'causal nexus tends to evaporate.'" *Id.* at 1044 (quoting *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005), and finding that a six-month period of time between the protected activity and the allegedly retaliatory action failed to support a finding of causation). That is the case here. As in *Stewart*, Lehigh's interactions with Moore continued throughout the time between the protected activity and the adverse action, a period that was more than double the time at issue in *Stewart*, and Moore has not pointed to any adverse actions during that time. *Id.* Moore's contention that the delay does not vitiate any inference of causation, because he had worked for Lehigh for more than 25 years and had been a good employee until the time of the disciplinary action in August of 2008, simply does nothing to establish a causal nexus between the protected activity and the adverse action separated by more than a year.

The causal nexus is further undermined here, by Lindquist's ignorance of Moore's prior charge of disability discrimination at the time that he suspended Moore pending discharge for the plant rules violation. *See Mitchell v. Iowa Protection And Advocacy Servs., Inc.*, 325 F.3d 1011, 1014 (8th Cir. 2003) (finding no inference of causal connection where the persons who made the adverse decision were ignorant of the claimant's prior allegedly protected activity). Moore also tries to overcome this deficiency by asserting that, even if Lindquist was ignorant of his prior administrative charge of discrimination, Guthrie knew about it and, when given the opportunity by the disciplinary report, pressed forward with a "last chance" agreement that imposed extraneous requirements that Moore produce his medical records, leading to Moore's resignation, all for retaliatory reasons. Moore's contentions on this point read more like an assertion that

Guthrie retaliated for Moore's refusal to provide his medical records than as an assertion that Guthrie retaliated for Moore's stale administrative charge, which apparently had not led to any consequences for the company or any benefit to Moore. It is also difficult to draw an inference of retaliatory intent from Guthrie's offer of a "last chance" agreement, where Guthrie could simply have terminated Moore for the rules violation under the notice of possible discipline, including discharge, for rules violations and the terms of the collective bargaining agreement. Moreover, Moore's "troubling" evidence that other employees were not necessarily treated in the same manner as he was with respect to being presented with a "last chance" agreement barely supports Moore's characterization. The court concludes that, at best, Moore's evidence of Guthrie's involvement in the offer of a "last chance" agreement amount to no more than a scintilla of evidence of retaliatory intent, which is not enough to stave off summary judgment. *See Stewart*, 481 F.3d at 1045-46 (citing *Anderson*, 477 U.S. at 252).

Assuming, for the sake of argument, that Moore has generated a prima facie case of retaliation, he has not generated any genuine issues of material fact that Lehigh's reason for disciplining him and offering him a "last chance" agreement—violation of a plant rule for being outside of his assigned work area—were pretextual. *Cf. id.* at 1043 (courts may presume that a prima facie case exists and move to the question of pretext). For the reasons explained above, Moore's prima facie case is very weak, so that it is plainly insufficient, standing alone, to establish pretext. *Id.* Moore has not pointed to additional evidence generating the necessary factual dispute as to pretext.

Moore attempts to generate a genuine dispute about whether he violated Plant Rule No. 12, because he contends that he was in the process of trying to find a supervisor to clarify his job assignment when he was found outside of his assigned work area, and simply got distracted by what a front end loader was doing. Moore's explanation does

nothing to demonstrate that he did *not* violate the plant rule in question, even if it might suggest that discharge or even a "last chance" agreement would be too harsh a response. When reviewing retaliation claims, courts "do not 'sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination.'" *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006) (reviewing retaliation claim and quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)); *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 883 (8th Cir. 2005) (same). The relevant inquiry is whether Lehigh believed that Moore was guilty of conduct justifying discharge, *see Logan*, 416 F.3d at 884 (citing *Scroggins v. University of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000)), and Moore has done nothing to generate a genuine issue of material fact as to Lehigh's belief that Moore's conduct did justify a discharge or "last chance" agreement at the time of his rules violation. In short, he has done nothing to generate any genuine issues of material fact that Lehigh's stated reasons for disciplining him were a pretext for retaliation for filing a disability discrimination charge more than a year earlier.

Therefore, Moore's retaliation claim also fails as a matter of law, and Lehigh is also entitled to summary judgment on that claim.

### III. CONCLUSION

Even recognizing that summary judgment is disfavored and should be sparingly used in employment discrimination and retaliation cases, *Simpson*, 425 F.3d at 542; *Woods*, 375 F.3d at 674, summary judgment in favor of Lehigh on all of Moore's claims is appropriate in this case. Moore has failed to generate genuine issues of material fact on the question of whether he is actually disabled or was regarded as disabled, as required for his disability discrimination claims under the ADA and the ICRA to proceed to trial, and on the question

of whether the discipline that he received for a work rules violation was a pretext for retaliation for filing an administrative charge of disability discrimination over a year earlier.

THEREFORE, Lehigh's October 8, 2010, Motion For Summary Judgment (docket no. 10) is **granted**, and summary judgment in favor of Lehigh shall enter on all of Moore's claims. The trial scheduled to begin on April 11, 2011, is cancelled. Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 4th day of February, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA